**JEANNETTE PENITUSI ROCHA, Appellant**

v.

**JOSE MANUEL B. ROCHA, Appellee**

High Court of American Samoa
Appellate Division

AP No. 18-90

March 11, 1992

Before RICHMOND, Associate Justice, GOODWIN,* Acting Associate Justice, MUNSON,** Acting Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:      For Appellant, Robert A. Dennison III
              For Appellee, Asaua Fuimaono

MUNSON, J.:

      This is a direct appeal following trial from a decree of divorce issued by the High Court of American Samoa, Trial Division (Kruse, C.J.; Tauanu'u, C.A.J.; Mata'utia, A.J.) in favor of respondent and appellee José Mañuel B. Rocha ("José") as to absence of desertion, and against petitioner and appellant Jeannette Penitusi Rocha ("Jeannette") as to adultery, habitual cruelty, and ill usage. Jeannette was awarded custody of their daughter born in 1985, $300 per month child support pendente lite, and $6,000 from the marital assets. She contests the equitable distribution of marital property and the predicate finding of fact as to the extent of the marital estate. José counters that the appeal is barred because Jeannette filed her motion for new trial one day beyond the ten days permitted, and on the merits argues that there is substantial evidence supporting the findings of fact and that the division is fair and equitable.

      We conclude that we have jurisdiction over the appeal, and because the factual finding that the marital estate consisted of $12,000 cash was not clearly erroneous, that the judgment evenly dividing this property should be upheld.

ISSUES

      1. Did Jeannette file her Trial Division motion for new trial or for reconsideration beyond the ten days permitted by T.C.R.C.P. 59(a)

---

*   Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

**   Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of the Interior.

and A.S.C.A. § 43.0802(a), thus depriving the Appellate Division of jurisdiction?

2. Did the Trial Division err in its fourth factual finding that the marital estate consisted of $12,000 cash?

3. Did the Trial Division err in its fifth conclusion of law that Jeannette was entitled to $6,000 from José as her equitable distribution share of the marital assets?

## PROCEDURAL HISTORY

Jeannette filed for divorce on December 28, 1989, based upon allegations of desertion and lack of child support. José filed a counter-petition alleging adultery, habitual cruelty, ill usage, and infliction of emotional distress and mental anguish. The case was tried on June 15, 1990, and a ruling was announced from the bench. Jeannette filed a request for findings of fact and conclusions of law. She also filed a motion for new trial or for reconsideration pursuant to T.C.R.C.P. 59(a) and A.S.C.A. § 43.0802(a). It was received by the Clerk's Office on June 25, 1990, file stamped June 26, 1990, and originally set for hearing on July 17, 1990. The court issued its decision and order containing findings of fact and conclusions of law on July 19, 1990. The hearing of the motion was continued to August 6, 1990, at which time it was denied. Jeannette filed her statement of issues pursuant to A.C.R. 10(b)(3) on August 16, 1990, and her appellant's brief on December 26, 1990. José filed his appellee's brief on February 20, 1991. Jeannette filed her appellant's reply brief on February 28, 1991. The parties are represented by the same counsel as at trial.

## FACTS

José is a Portuguese national employed during the marriage as a fisherman on a purse seiner vessel. He left Samoa on four extended trips annually. José regularly sent money to his mother in Portugal. Jeannette used $10,000 to finance a trip to see her grandfather in Los Angeles and almost $7,000 to attend her sister's graduation. The marriage ended when Jeannette accused José of deserting her during a three month fishing voyage starting November 1988 and leaving inadequate money for support while gone. At this time José learned that she had been cohabiting with another man in his absence, renting a house with him with money José had left her. When José received service of this divorce action on December 29, 1989, he immediately transferred

65

$12,842 to his mother in Portugal.

At the time of trial, José had approximately $900 in a Portuguese bank account, the source of which is unknown. According to appellant, appellee's mother had between $10,000 - $15,000 in a Portuguese bank account held for his benefit, excluding the last minute transfer of $12,842. He held legal title to the apartment in Portugal where his parents, brother, and nephews live. He held $6200 cash and $646 at a bank account in American Samoa, was owed $6500 - $6800 in accrued earnings, and owned a motorcycle he kept aboard the fishing vessel.

## STANDARD OF REVIEW

Under A.S.C.A. § 43.0801(b), we review the decision of the Trial Division under the clearly erroneous standard. All disputed issues of fact not addressed in the judgment are presumed to have been resolved in favor of the prevailing party. The issue concerning appellate procedure is a question of law which is therefore reviewed de novo.

## ANALYSIS

### Appellate Jurisdiction

A.S.C.A. § 43.0802(a) provides: "Before filing a notice of appeal, a motion for new trial shall be filed within 10 days after the announcement of the judgment or sentence." The requirement of a motion for new trial or reconsideration of judgment is jurisdictional. Taulaga v. Patea, 17 A.S.R.2d 34 (App. Div. 1990). One of the purposes of the motion is to alert the trial court to possible errors or omissions in its opinion, so the reviewing court will not be left to speculate why the question was not addressed. Kim v. Star-Kist Samoa, Inc., 8 A.S.R.2d 146, 150 (App. Div. 1988).

The ten-day period commences with the oral "announcement" of the judgment or sentence from the bench, if that is done, notwithstanding any subsequent written opinion, notice, or correction short of a new judgment. Judicial Memorandum No. 2-87, 4 A.S.R.2d 172 (1987).

At issue here is not when the judgment was "announced" or when the motion for new trial was due. The parties agree that the deadline was June 25, 1990. Rather, the point of contention is the meaning of the words "shall be filed" in A.S.C.A. § 43.0802(a).

Counsel for Jeannette states that the motion was delivered to the office of the clerk on June 25, 1990, which is reflected by the "received" stamp. If a document is timely presented for filing, and for no apparent reason it is untimely filed by the clerk the next day, it must be deemed filed when presented. To dismiss an appeal due to circumstances beyond a party's control and within the magisterial duties of the court would violate due process.

This issue was raised before the Trial Division, which implicitly rejected it by hearing the motion on its merits. The motion for new trial is deemed filed when presented to the clerk for filing, absent valid grounds for rejecting it, and the Appellate Division has jurisdiction over this appeal.

## Marital Property

José confuses the issues and defends the court's determination that the marital property consisted of $12,000 cash by incorrectly arguing that the High Court of American Samoa lacks jurisdiction over funds in Portugal, including $12,842 transferred to his mother upon receiving service of this divorce action. To the contrary, all assets of the marital estate are properly before the court and subject to its jurisdiction. While the court may not have jurisdiction to enforce an award of real property in another forum, such as an apartment in Portugal, so long as it has jurisdiction of the parties, it may make equitable distribution of the marital estate, taking into account the value of real and personal property belonging to the marriage, wherever located.

However, marital property does not include property which has been reasonably expended by one of the spouses for his or her own use or as a gift. Absent fraud, the $17,000 used by Jeannette for two trips to the mainland prior to this action and the $12,842 José transferred to his mother upon receiving service of this divorce proceeding are not marital property. Jeannette argues that the latter transfer was patently made to avoid inclusion in the estate, and must be disregarded. See Karr v. Karr, 628 P.2d 267, 278 (Mont. 1981).

José himself admitted that he transferred funds to keep Jeannette from getting them. He says that he was unable to save money while married, and seems to imply that Jeannette had spendthrift propensities. He also testified that the money was transferred to his mother as a gift.

In resolving issues of witnesses' credibility, motive, and

67

character, the Appellate Division is limited to the naked transcripts. "A written transcript is but a pallid reflection of what actually happened in court. It does not and cannot reflect demeanor, attitude, intonation, inflection, or personality." National Pac. Ins. Co. v. Oto, 3 A.S.R.2d 94, 94 (App. Div. 1986). Hence the presumption that such determinations by the Trial Division are correct unless clearly erroneous. A.S.C.A. § 43.0801(b); United States v. United States Gypsum Co., 333 U.S. 364 (1948).

In Karr, 628 P.2d at 278, the Montana Supreme Court, among numerous other contested factual questions, upheld a finding of the trial court that $12,000 taken out of a Montana bank account and placed in a Canadian bank certificate of deposit in the name of the couple's children on the date the husband received the summons and divorce petition was in fact still property of the marital estate. The trial court in Karr found the husband to be

> a highly unreliable, untrustworthy, evasive, intentionally confusing, studiously misleading and, on occasion, patently perjurious witness. His testimony, given upon discovery or at trial, on material facts, was therefore approached with the greatest caution, accepted in full only where clearly substantiated by other evidence and weighed lightly in the face of conflicting evidence.

Karr, 628 P.2d at 269. No such finding adverse to José's credibility was made here. Indeed, Jeannette was found to be "at fault" in the marriage, which, although that does not bear directly on credibility as to this transfer, does reflect credibility findings as to other contested issues. Karr does not stand for the proposition that all last minute gift transfers must be disregarded. They very frequently will be, and Karr upheld the trial court in so doing under the facts of that case.[3] But here, the Trial Division apparently believed José had made a valid gift to his mother. That he was motivated by the prospect of seeing his soon to be ex-wife fritter it away on her own personal use, where he thought it would be lost to him in any event, does not detract from the court's acceptance that the transfer was a bona fide gift.

---

[3]Although an issue was raised in the case as to whether the husband was subject to the personal jurisdiction of the Montana courts, Karr, 628 P.2d at 277-78, there was no doubt at all that the court had jurisdiction over the $12,000 moved to Canada, despite its location.

Likewise, the court seems to have interpreted José's somewhat confusing testimony to the effect that the earlier transfers to Portugal were gifts, even if he could theoretically get back some benefit from them if he returns to Portugal to live or when his parents die. That some of the money was used to pay the mortgage of the apartment where his family in Portugal lives, but is held in his name, does not negate donative intent. The court did not address the approximately $900 in a Portuguese bank account José owned, but absolutely no testimony was given—José was not questioned—as to the timing or source of those funds. He did testify, however, that he had sent money home before being married. The presumption that property owned at the time of divorce is not separate property may be negated by testimony concerning gifts during marriage or transfers prior to the marriage.

The property held by José that the court seems to have decided to be property of the estate was the $6200 cash and $646 in an American Samoan bank account, $6500-$6800 in accrued earnings, and possibly the motorcycle kept aboard the boat. The court also took into account the $300 per month child support ordered pendente lite. While the assets arguably total at least $13,346-$13,646, taking into account this interim child support, the finding that the estate constitutes $12,000 is not clearly erroneous. Moreover, this finding of fact must be evaluated within the context of equitable property distribution.

## Equitable Distribution

Consistent with the law in many jurisdictions, A.S.C.A. §§ 42.0209-.0210 authorizes the court to equitably distribute the property of either spouse, regardless of title, in a fair and just manner. Although the trial judge referred to "90 years of case law" as if under the impression an even split was mandatory, Jeannette has cited no American Samoan case law requiring a 50%-50% distribution. Nevertheless equity frequently dictates such a result.

The Trial Division did not dwell on it, but the record suggests that it found both parties somewhat lacking clean hands. Jeannette had spent $17,000 during the marriage on her trips to the mainland, used marital property to rent a house with another man and had been found "at fault" in the divorce. Unless the parties had been living separately for five years, the court was required to make a finding of fault. See A.S.C.A. §§ 42.0201-.0208; Wray v. Wray, 5 A.S.R.2d 34, 47 n.6 (Trial Div. 1987). José's abrupt transfer of $12,842 at least appears improper. Yet in applying equity, the court had all the facts we have,

plus the benefit of seeing and hearing the witnesses. Even if some of the predicate factual findings were slightly erroneous, such as the fact that $900 in the Portuguese bank account was José's personal property, or the more significant amounts were not marital property, the court had an overall power and duty to arrive at a just result.

Perhaps the court was under a misapprehension as to its power over property in another country, but the record has not been cited to us for that point. Notwithstanding the possibility that these errors of law tainted the decision, the court was required to do equity. The division of property does not seem to us to be manifestly unfair.

## Conclusion

The Trial Division did not err in considering Jeannette's motion for new trial or for reconsideration on the merits. We conclude that the Appellate Division has jurisdiction over the appeal because the motion was presented for filing within the ten days set forth in T.C.R.C.P. 59(a) and A.S.C.A. § 43.0802(a). The factual finding that the marital estate consisted of $12,000 cash, while perhaps mistaken in some particulars, was not clearly erroneous. Even if this factual finding was in error, the equitable distribution of $6,000 from José to Jeannette was not manifestly unjust in view of the totality of the circumstances. The judgment of the Trial Division is AFFIRMED.